OPINION OF THE COURT
Dennis Edwards, Jr., J.
Defendants Ellen Reeves, Joseph Baudo, Dennis Pagan and Julio Garcia move to controvert a search warrant and to suppress property seized. The court ruled that defendant Isaac Arnow and Massie Odiotti lacked standing to join in this motion to controvert the warrant.
It is conceded that the challenged warrant did not contain a provision specifying nighttime execution.
The movants and the prosecution stipulated that if Assistant District Attorney Lewis Halpern and Police Officer Ercole Gaudioso had been called to testify in this proceeding that their testimony would have been as follows:
“The undersigned parties hereby stipulate that if Assistant District Attorney Lewis Halpern and Police Officer Ercole Gaudioso had testified their testimony would have been as follows:
“1. That the attached search warrant and application were prepared under the supervision of A.D.A. Halpern. That it was originally prepared for Police Sergeant Edward Monks to be affiant. That however, due to the unavailability of Police Sergeant Monks on September 11, 1979, the search warrant application was changed so as to make *129 Police Officer Ercole Gaudioso the affiant. That the search warrant as to the affiant was not changed to reflect the changes in the search warrant application because of an inadvertent oversight. That a request for night time execution was placed in the search warrant application but, due to a mistake, a provision for authorizing a night time execution was not placed in the search warrant.
“2. That on September 11, 1979 at or about 11:00 p.m. A.D.A. Halpern and Officer Gaudioso went to the home of Justice Norman B. Fitzer. That Officer Gaudioso swore to the contents of the attached search warrant application before Justice Fitzer. That Officer Gaudioso by way of the attached search warrant application applied for a search warrant for apartment 7B, located at 19 West 55th Street, New York, New York. That at 11:10 p.m. Justice Fitzer signed the attached search warrant. That the search warrant was executed shortly thereafter on that same night. That before the warrant was signed Justice Fitzer was advised that police officers were outside of the apartment awaiting the signing of the warrant. That after the warrant was signed officer Gaudioso used Justice Fitzer’s home telephone to advise the other police officers that the warrant was signed.”
Officer Gaudioso’s 11-page affidavit submitted in support of the application for the search warrant illustrated and detailed that there was a large-scale drug operation taking place in the apartment premises in question. It was disclosed that eavesdropping orders had been issued and specific disclosures were set forth in this affidavit. The exact language of the next to last paragraph in this affidavit is as follows: “In view of the fact that the property sought to be seized is narcotics, and therefore, can easily and quickly be disposed of, it is further requested that the officer’s executing the warrant be permitted to enter during the nighttime without prior notice pursuant to Section 690.35 (3a) (3b) of the Criminal Procedure Law.” The search warrant as signed by the court did in fact contain a no-knock provision pursuant to CPL 690.35 (subd 3, par [b]).
*130 The warrant was executed at approximately 11:45 p.m., on the same night and the officers seized property consisting of money and contraband.
ISSUE
Is the execution at 11:45 p.m. of a search warrant signed at or about 11:10 p.m. the same night lacking nighttime authorization lawful and should property seized by virtue of such a search warrant be suppressed. Movants contend that the statutory mandate in this State is clear and unequi vocable, that a search warrant may be executed only between the hours of 6:00 a.m. and 9:00 p.m., unless the warrant expressly authorizes execution thereof at any time of the day or night (CPL 690.45, subd 5). Further, the court can make the warrant executable at any hour of the day or night when it is satisfied that the grounds described in CPL 690.35 (subd 3, par [a]) exist. Thus a warrant executed in the nighttime without the proper direction is unlawfully executed, is fatally defective and the property seized thereunder should be suppressed.
It is the People’s position that although the search warrant failed to expressly authorize a nighttime search, a technical violation, given the specific attendant circumstances in this proceeding of the signing of the search warrant by the court, does not constitutionally nor statutorily require the suppression of the property seized during the execution of the warrant.
DETERMINATION
It is the decision of this court that the omission of an expressed authorization for a nighttime search in the challenged warrant before this court does not mandate the application of the exclusionary rule in light of the particular, specific set of facts and circumstances herein.
The nighttime search provisions are statutory requirements that are not of constitutional stature. The legislative intent in requiring a specific provision in the warrant for its execution at night was to protect persons and premises, except in special cases, from being searched during the hours of full darkness and rest (People v Watson, 39 Misc 2d 808, 810).
*131 In United States v Searp (586 F2d 1117, cert den 440 US 921), even though the affidavit in support of the search warrant did not provide a basis for a night search, the Sixth Circuit found that the application of the exclusionary rule was not warranted.
“While the police failed to comply with the procedural requirements of Rule 41 (c), the search was nevertheless ‘reasonable,’ in the constitutional sense, because it was conducted pursuant to a valid state warrant, and met the requirements of the fourth amendment.” (United States v Searp, 586 F2d, at p 1122.)
“When there has merely been a violation of the procedural rules governing night searches, suppression, with its attendant potential for a miscarriage of justice, is not justified when there was neither a possibility of bad faith conduct on the part of the police, nor prejudice to the defendant (in the sense that the search might not have occurred or would not have been so abusive if the requirements of the Rule had been observed). The test is met, and suppression would be required when, based on the facts and circumstances known to the police at the time application was made for the warrant, there is a reasonable possibility that permission for a night search would have been refused even if an appropriate request had been made.” (United States v Searp, 586 F2d, at p 1125.)
In the case before this court there was (1) affiant’s request for a nighttime search. (2) This request was reasonable; and (3) a good faith basis therefor was set forth in the supporting affidavit, particularly the sequence of events of the day in question, September 11, 1979, which clearly justifies a night search. (4) The affidavit and proposed warrant were presented to the Judge at his home at 11:10 p.m. on September 11,1979. (5) The property sought to be seized was narcotics which property it was represented would be delivered to the apartment designated in the warrant on the evening of September 11,1979. (6) The officer in his affidavit in the very next paragraph requested “that the officers executing the warrant be permitted to enter during the nighttime”. (7) A no-knock provision was requested and set forth in the warrant. (8) It appears that the officer also informed the Judge that other *132 officers had staked out the apartment and were awaiting the warrant. (9) This gives credence to the disclosures in the affidavit relating to the immediacy of the request for a search warrant and the specific request for nighttime execution. (10) Furthermore, consistent with the foregoing, the officer used the Judge’s home telephone to inform the police at the stakeout that the warrant was signed. It is noted that the warrant was in fact executed at 11:45 p.m. on the same night.
The technical defect upon which this motion is bottomed is not a fatal defect. Mere inadvertence, i.e., the lack of the traditional phrase “nighttime execution,” does not preclude a consideration and examination of the substance of the application for the warrant, the purpose, the intent of the applicant, the specific character of the circumstances, the nature of the property, the scope and duration of the disclosed investigation on which the affiant relies, in sum the totality of the circumstances surrounding and attendant to the application for the issuance of a warrant authorizing and specifically requesting nighttime execution.
Only recently the Fifth Circuit in United States v Williams (622 F2d 830, 840) held that: “evidence is not to be suppressed under the exclusionary rule where it is discovered by officers in the course of actions that are taken in good faith and in the reasonable, though mistaken, belief that they are authorized. We do so because the exclusionary rule exists to deter willful or flagrant actions by police, not reasonable, good-faith ones. Where the reason for the rule ceases, its application must cease also.”
A consideration and examination of the facts and circumstances herein persuasively demonstrate that the nighttime execution of the challenged warrant was correct, proper and authorized.
The defendants’ motion to controvert the warrant and to suppress the evidence seized is denied.