STATE of Wisconsin, Plaintiff-Respondent,†

v.

Todd Michael SEYFERTH, Defendant-Appellant.

Court of Appeals

*No. 86–0252–CR. Submitted on briefs August 15, 1986.—Decided October 15, 1986.*

(Also reported in 397 N.W.2d 666.)

† Petition to review denied.

354

For the defendant-appellant, the cause was submitted on the briefs of *Donna L. Hintze*, assistant state public defender.

For the plaintiff-respondent, the cause was submitted on the brief of *Bronson C. La Follette*, attorney general, and *David J. Becker*, assistant attorney general.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

NETTESHEIM, J.    Following denial of a motion to suppress evidence seized pursuant to the execution of a search warrant, Todd Michael Seyferth pled guilty to a charge of unlawful possession of a controlled substance with intent to deliver pursuant to secs. 161.41(1m) and 161.14, Stats. A judgment of conviction was entered accordingly. Seyferth appeals from the judgment, specifically raising upon this appeal the question of whether the nighttime execution of the search warrant was valid. We conclude the execution of the search warrant was in compliance with statutory and constitutional standards. Therefore, we affirm the judgment of conviction.

The essential facts in this case are not in dispute. Investigator Thomas Christensen of the Racine police department began his tour of duty on March 24, 1985, at

4:00 p.m. During the course of his shift, Christensen obtained a court commissioner's signature upon the search warrant in question at 11:40 p.m. The search warrant itself was executed at Seyferth's home by Christensen and three other officers at approximately midnight. Upon arriving at the Seyferth residence, the officers were greeted by Seyferth's father who admitted the officers and directed them to Seyferth's room in the basement of the home. The officers found Seyferth asleep. They awakened him and read to him the search warrant and a constitutional rights form. The officers then searched the room and discovered the incriminating evidence.

Seyferth first contends that Wisconsin statutory law does not authorize execution of search warrants at night. We disagree.

Seyferth argues that the Wisconsin statutes are silent with respect to when a search warrant may be executed. Therefore, he reasons that the common-law rule reciting a "strong aversion to nighttime searches" governs. *See United States ex rel. Boyance v. Myers*, 398 F.2d 896, 897–98 (3d Cir. 1968); *United States v. Gibbons*, 607 F.2d 1320, 1326 (10th Cir. 1979).

> During the early years of the republic this common-law tradition was embodied in two statutes passed by our first Congress that authorized only daytime searches, Act of July 31, 1789, § 24, 1 Stat. 43; Act of March 3, 1791, § 29, 1 Stat. 206. Thereafter, the reluctance to authorize nighttime searches except under exceptional circumstances continued as an integral part of our jurisprudence.

*Myers*, 398 F.2d at 898.

The fault with Seyferth's argument lies in his claim that the Wisconsin statutes concerning search warrants

are written in such a fashion so as to clear the way for the application of the common-law rule. The interpretation of a statute presents a question of law. *State v. Barnes*, 127 Wis.2d 34, 37, 377 N.W.2d 624, 625 (Ct. App. 1985). Consequently, we owe no deference to the conclusion of the trial court. *Id.*

Chapters 939 to 948, Stats., recite the substantive crimes, defenses and other related considerations known to the criminal law of this state. Section 939.10, Stats., provides:

**Common-law crimes abolished; common-law rules preserved.** Common-law crimes are abolished. The common-law rules of criminal law not in conflict with chs. 939 to 948 are preserved.

Chapters 967 to 975, Stats., address the procedural law in criminal actions. These chapters include the statutory law governing search warrants. *See* secs. 968.10 through 968.23, Stats. No equivalent to sec. 939.10, Stats., preserving any common-law rules of criminal procedure not in conflict with chs. 967 to 975 is recited.

The criminal code of Wisconsin has undergone a number of comprehensive changes. *See* ch. 173, Laws of 1977. Professor Sutherland in his treatise on statutory construction observes:

But general and comprehensive legislation, where course of conduct, parties, things affected, limitations and exceptions are minutely described, indicates a legislative intent that the statute should totally supersede and replace the common-law dealing with the subject matter.

2A N. Singer, *Sutherland Statutory Construction* § 50.05, at 440–41 (rev. 4th ed. 1984).

The legislature had it within its power to retain the procedural rules of common law not in conflict with the procedural rules created by chs. 967 to 975, Stats. It chose not to do so. This reflects a clear indication of legislative intent that the statutes—not the common law—govern criminal procedure, including the execution of search warrants, in this state.

Nor are we persuaded that sec. 939.10, Stats., was intended to apply to chs. 967 to 975, Stats. The statute itself is entitled "common-law crimes abolished." This signals that the legislature intended the statute to apply to substantive crimes. The title of a statute may be indicative of legislative intent. *Barnes,* 127 Wis.2d at 40, 377 N.W.2d at 626. To broaden the reach of sec. 939.10 to procedural matters flies in the face of this expressed intent.

■

Having concluded that the execution of a search warrant in the nighttime is statutorily permitted, we turn to Seyferth's argument that such execution is violative of the fourth amendment. Specifically, Seyferth contends that a nighttime execution of a search warrant, absent a showing of requisite necessity, is unreasonable.

This constitutional issue presents a mixed question of law and fact. *See State v. Woods,* 117 Wis.2d 701, 714-15, 345 N.W.2d 457, 464-65 (1984). While the trial court's findings of evidentiary or historical fact will not be overturned unless they are clearly erroneous, the application of constitutional principles to the facts of the case is subject to independent appellate review. *Id.* at 715, 345 N.W.2d at 465. Here, although the circuit court did not make any findings of fact, the essential facts surrounding the procuring and execution of the search warrant are not in dispute.

When assessing the reasonableness of a search, we must balance the need for the seizure against the invasion which the seizure entails. *State v. Wilks*, 121 Wis.2d 93, 100, 358 N.W.2d 273, 277 (1984), cert. denied — U.S. —, 105 S. Ct. 2144 (1985). In conducting this balancing test, the individual's fourth amendment interest must be weighed against the legitimate governmental interest which will be promoted by the intrusion. *Id.* The degree and extensiveness of the governmental intrusion of the individual's zone of privacy must also be considered. *Id.* at 105, 358 N.W.2d at 279. The more intrusive the search, the greater the need which will have to be shown to justify it. *Camara v. Municipal Court*, 387 U.S. 523, 537 (1967); *State v. Monahan*, 76 Wis.2d 387, 395, 251 N.W.2d 421, 424 (1977).

In *Gooding v. United States*, 416 U.S. 430, 454 (1974) (quoting 21 USC § 879(a) (1970)), the United States Supreme Court construed a federal statute permitting the service of a search warrant at night only if the issuing magistrate "is satisfied that there is probable cause to believe that grounds exist for the warrant and for its service at such time." The Supreme Court held that "no special showing for a nighttime search, other than a showing that the contraband is likely to be on the property or person to be searched at that time" was required. *Id.* at 458.

We acknowledge, as does the state, that *Gooding* does not expressly deal with a fourth amendment constitutional issue, despite Justice Marshall's complaint that "[t]he Court seems totally oblivious to these [fourth amendment] constitutional considerations." *Id.* at 462 (Marshall, J., dissenting). Nonetheless, we conclude that the United States Supreme Court in *Gooding*

at least implicitly reached the constitutional issue. Recognized commentators have similarly read *Gooding*.

> Although *Gooding* can be regarded as a case in which the Court took the issues as framed by the litigation below with no constitutional overtones, this reading is too limited. The majority's failure to acknowledge that, despite the limited nature of the issue in the case before it, the subject area has significant constitutional ramifications strongly suggests hostility toward the proposition that fourth amendment reasonableness might address the timing of searches, including those conducted pursuant to warrants.

G. Dix, *Means of Executing Searches and Seizures as Fourth Amendment Issues*, 67 Minn. L. Rev. 89, 105 (1982). *See also* 1 W. Wringel, *Searches & Seizures, Arrests and Confessions*, § 6.2(c) at 6-11 (2nd ed. 1985). We read *Gooding* similarly and conclude that the United States Supreme Court has spoken to the issue.

Alternatively, we adopt the United States Supreme Court's holding on this issue under the federal statute in *Gooding* as our own for purposes of the fourth amendment considerations raised here. Since Seyferth does not challenge that probable cause existed that contraband was likely to be on the property at the time in question, this constitutional test is met.[1]

---

[1] Other courts, although not necessarily adopting *Gooding*, are in agreement that nighttime execution of search warrants are not unconstitutional. *See United States v. Searp*, 586 F.2d 1117, 1124 (6th Cir. 1978) *cert. denied* 440 U.S. 921 (1979); *People v. Glass*, 56 Cal. App.3rd 368, 372, 128 Cal. Rptr. 413, 415-16 (Cal. Ct. App. 1976); *People v. Arnow*, 108 Misc.2d 128, 130-32, 436 N.Y.S.2d 950, 952-53 (N.Y. Sup. Ct. 1981); *State v. Brock*, 633 P.2d 805, 811-13 (Or. Ct. App. 1981); *Commonwealth v. Johnson*, 462 A.2d 743, 748-49 (Pa. Super. Ct. 1983).

Finally, Seyferth argues that we should, nonetheless, hold that a nighttime execution of a search warrant, absent a showing of requisite necessity, is invalid under the Wisconsin Constitution, art. I, § 11. We recognize that we are free to afford greater protection to Wisconsin citizens under our constitution than that required under the federal constitution through the fourteenth amendment. *State v. Doe*, 78 Wis.2d 161, 171, 254 N.W.2d 210, 215 (1977).

Although the Wisconsin Supreme Court when interpreting the Wisconsin Constitution has, on occasion, chosen to adopt United States Supreme Court decisions on equivalent questions under the federal constitution,[2] we do not see this as a mandatory and binding process. Rather, we view adoption of United States Supreme Court rationale as made on a case-by-case basis. Therefore, the question becomes one of whether we choose to follow the United States Supreme Court's treatment of this issue in *Gooding*.

Having adopted the *Gooding* rationale as our own for purposes of the fourth amendment under the federal constitution, we choose to do likewise for purposes of art. I, § 11 of the Wisconsin Constitution. Since the

---

[2] *See State v. Rodgers*, 119 Wis.2d 102, 115, 349 N.W.2d 453, 459 (1984); *State v. Boggess*, 115 Wis.2d 443, 453-57, 340 N.W.2d 516, 522-24 (1983); *State v. Callaway*, 106 Wis.2d 503, 519-20, 317 N.W.2d 428, 437 (1982) *cert. denied* 459 U.S. 967 (1982); *State v. Wisumierski*, 106 Wis.2d 722, 727-28, 317 N.W.2d 484, 487 (1982); *State v. Fillyaw*, 104 Wis.2d 700, 710-11, 312 N.W.2d 795, 800-01 (1981) *cert. denied* 455 U.S. 1026 (1982); *State v. Fry*, 131 Wis.2d 153, 170-76, 388 N.W.2d 565, 573-75 (1986).

execution of the search warrant in this case complies with this test, we affirm the ruling of the circuit court.[3]

*By the Court.*—Judgment affirmed.

---

[3] Moreover, no authority is cited to us (and we have discovered none) which reveals a state court moving beyond the limits of the fourth amendment to conclude that the execution of a search warrant during the nighttime is violative of state constitutional provisions. *See* 1 W. Wringel, *Searches & Seizures, Arrests and Confessions*, § 6.2(c) at 6-11 (2nd ed. 1985).