STATE of Wisconsin, Plaintiff-Respondent,

v.

Scott A. EHNERT, Defendant-Appellant.

Court of Appeals

*No. 90–1529–CR. Submitted on briefs January 2, 1991.—Decided January 30, 1991.*

(Also reported in 466 N.W.2d 237.)

On behalf of the defendant-appellant the cause was submitted on the brief of *Leonard D. Kachinsky,* of *Kachinsky Law Offices* of Neenah.

On behalf of the plaintiff-respondent the cause was submitted on the brief of *Donald J. Hanaway,* attorney general and *Laura Dulski,* assistant attorney general.

Before Nettesheim, P.J., Brown and Scott, JJ.

NETTESHEIM, P.J.   The issue on this appeal is whether information supplied in an affidavit in support of a search warrant application was too "stale" such that

suppression of the fruits of the search was necessary. The circuit court concluded that the information was not too stale and denied Scott Ehnert's motion for suppression of the evidence resulting from the execution of the search warrant.

On June 22, 1989, the state made application to Winnebago County Circuit Judge Robert A. Haase for a search warrant authorizing a search of Ehnert's residence for controlled substances. In support of the application, the state supplied Lieutenant Michael Brooks' affidavit which summarized various reports of the Winnebago County Sheriff's Department.

Lieutenant Brooks' affidavit revealed, *inter alia,* that two guns (a twenty-gauge Mossburg pump action shotgun and a twenty-two caliber semiautomatic rifle) had been stolen one month earlier, on May 22, 1989, during a burglary at the residence of Jay and Ernest Stelmach. On June 22, 1989, before application for the search warrant was made, Barry Allan Blochwitz gave a statement to the sheriff's department stating that a person named Brian Jack had admitted stealing the weapons from the Stelmach residence. Blochwitz also stated that within the last month he had driven Jack to Ehnert's house where Jack sold the stolen guns to Ehnert. In addition, Blochwitz stated that he had purchased marijuana and cocaine from Ehnert about four or five times since March or April of 1989.[1]

Based upon the information contained in Lieutenant Brooks' affidavit, Judge Haase issued the search warrant on June 23, 1989.

---

[1] Lieutenant Brooks' affidavit in support of the search warrant is lengthy and detailed. We recite only those portions which pertain to Ehnert's argument that the affidavit's information was too stale.

The search warrant was executed. The authorities found and seized suspected controlled substances, related paraphernalia and the Mossburg shotgun stolen from the Stelmach residence.

As a result, Ehnert was charged with two counts of possession of a controlled substance (LSD and THC) with intent to deliver and one count of possession of a firearm as a felon. The charges were filed in Winnebago County Circuit Court Branch I, presided over by Judge William E. Crane. Following the denial of his motion to suppress, Ehnert entered a plea of no contest to the two controlled substance charges. The firearms charge was dismissed but read into the record for sentencing purposes. On one count, Ehnert was sentenced to four years' imprisonment and a $1,000 fine plus costs. On the other count, Ehnert received a five-year stayed sentence with eight years' probation and a fine of $500 plus costs. Postconviction, Ehnert sought again to suppress the evidence seized pursuant to the search warrant. The circuit court confirmed its earlier ruling denying suppression. Ehnert appeals from both the judgment and the postconviction order.

Ehnert argues that Lieutenant Brooks' affidavit did not state probable cause to support the search warrant because certain of the information was too stale.

We first state some general standards which apply to judicial review of a determination that probable cause exists to support issuance of a search warrant. Appellate review of an affidavit's sufficiency to support the issuance of a search warrant is limited. *State v. Reed,* 156 Wis. 2d 546, 554, 457 N.W.2d 494, 497 (Ct. App. 1990). We pay great deference to the determination made by the issuing entity. *Id.* In doubtful or marginal cases, the determination should be governed by the preference to

be accorded to warrants. *Illinois v. Gates,* 462 U.S. 213, 237 n.10 (1983).

Probable cause is a fluid concept, turning on the assessment of probabilities in a particular factual context. *Id.* at 232. Whether probable cause exists must be determined by examining the totality of the circumstances. *Id.* at 230. The probable cause standard is a practical, nontechnical one invoking the practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. *Id.* at 231.

As to "staleness," "the proof must be of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time." *Sgro v. United States,* 287 U.S. 206, 210 (1932). "Whether the proof meets this test must be determined by the circumstances of each case." *Id.* at 210–11. *See also United States v. Dauphinee,* 538 F.2d 1, 5 (1st Cir. 1976). In light of this ad hoc approach, it is not surprising that Ehnert can point to favorable cases where staleness was found because the time span between the facts relied upon and the issuance of the warrant was approximate to or less than that in the instant case.[2]

However, timeliness is not determined by a counting of the days or months between the occurrence of the facts relied upon and the issuance of the warrant. *United States v. Johnson,* 461 F.2d 285, 287 (10th Cir. 1972). Instead, timeliness depends upon the nature of the underlying circumstances and concepts. *Id.* When the activity is of a protracted and continuous nature, the

---

[2]*See, e.g., State v. Jaeger,* 196 Wis. 99, 219 N.W. 281 (1928); *United States v. Nichols,* 89 F. Supp. 953 (W.D. Ark. 1950); *United States v. Bosch,* 209 F. Supp. 15 (E.D. Mich. 1962).

passage of time diminishes in significance. *Id.* Factors like the nature of the criminal activity under investigation and the nature of what is being sought have a bearing on where the line between stale and fresh information should be drawn in a particular case. *Dauphinee,* 538 F.2d at 5.

Here, the burglary at the Stelmach residence had occurred on May 22, 1989, thirty days before application for the search warrant. The information from Blochwitz implicating Ehnert in the purchase of the stolen weapons and drug dealing had been obtained the same day the warrant was applied for, June 22. Blochwitz' statements about Ehnert's drug dealing covered four or five episodes over the prior two or three months.

The ultimate test for issuance of a search warrant is whether there is probable cause to believe that the objects sought are linked to the commission of a crime and whether those objects are likely to be found in the place designated in the search warrant. *Ritacca v. Kenosha County Court,* 91 Wis. 2d 72, 77–78, 280 N.W.2d 751, 754 (1979).

Giving appropriate deference to the determination of Judge Haase, who issued the search warrant, we conclude that Lieutenant Brooks' affidavit stated probable cause to support the issuance of the warrant. Ehnert's suspected and documented activity consisted of four or five drug dealings and purchase and possession of stolen weapons during the prior two to three months. This information documented a pattern of ongoing criminal activity—not an isolated event. With such history established, the presence of controlled substances, related paraphernalia, and weapons on the premises of a suspected drug dealer are not unwarranted speculation. Rather, it

470

represents a common sense assessment of the probabilities in this particular factual context. *State v. Lee,* 157 Wis. 2d 126, 131, 458 N.W.2d 562, 564 (Ct. App. 1990).

We affirm the trial court's denial of Ehnert's suppression motion.[3]

*By the Court.*—Judgment and order affirmed.

---

[3]Having concluded that the supporting affidavit established probable cause, we need not address the state's alternative argument that the evidence was nonetheless admissible under the "good faith" exception to the exclusionary rule. *See United States v. Leon,* 468 U.S. 897 (1984).